VICKSBURG & MERIDIAN RAILROAD COMPANY *v.* F. J. SHARKEY.

**Verdict — Preponderance of Proof — Common Carriers — Contracts.**

In a suit for the value of a mule alleged to have been killed by the careless unloading of a car of mules by a defendant Railroad Company, where the preponderance of proof showed that the injury occurred by reason of the fault of the animal and not of the carrier, and where, further, such injury arose from a cause which, by contract of shipment, relieved the carrier from liability, the verdict and judgment should be for the carrier.[1]

Suit by F. J. Sharkey for $140 for value of one mule alleged to have been killed by defendant's carelessness in unloading a car of mules at Vicksburg.

The mules were delivered by appellee to the St. Louis & Cairo Short Line at Cairo, Ill., on February 13, 1885, for transportation to, and delivery at Vicksburg. The Illinois Central Railroad,

---

1

Section 1059, Code of 1880, and § 1808, Code of 1892, making proof of injury inflicted by the running of the locomotives or cars of such company *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury does not apply to causes of action arising *ex contractu.* Railroad Co. *v.* Trotter, 60 Miss. 442.

The railroad must show facts to exonerate itself if it be shown that injury was inflicted by the running of its locomotive or cars. It cannot rely on presumptions or conjectures. Vicksburg Railroad Co. *v.* Hamilton, 62 Miss. 503; Kansas City Railroad Co. *v.* Doggett, 67 Miss. 250.

Court may direct a verdict for defendant if the plaintiff makes out a *prima facie* case only under the statute, and the company by undisputed evidence shows that its servants did everything possible to prevent the injury. Dedford *v.* Louisville Railroad Co., 65 Miss. 385.

The carrier is not liable for injury inflicted by an animal upon itself, or caused by other animals with which it is being shipped in the same car, if the injury results from no fault of the carrier. Railroad Co. *v.* Scruggs, 69 Miss. 418.

A common carrier of live stock may by special contract stipulate for immunity from liability for injuries caused by the animals being wild, unruly, weak, or of different sizes or classes, maiming each other or themselves. Railroad Co. *v.* Scruggs, 69 Miss. 418.

The burden of proof is upon a common carrier claiming exemption from liability for injuries to goods under a special contract, to show that the damage resulted from one or more of the excepted causes in the contract and without its fault. Railroad Co. *v.* Abels, 60 Miss. 1017; Johnson *v.* Railway Co., 69 Miss. 191.

one of the corporations composing the Cairo Short Line, delivered the mules to the Vicksburg & Meridan Railroad at Jackson, Miss., for delivery at Vicksburg.

Preponderance of proof showed that two night watchmen of appellant made an examination of the car in which the twenty-one mules were received at Vicksburg, at half-past two o'clock in the morning, and that they found that one mule had kicked his hind foot through the slat work of the car about five feet from the bottom, and was hung up by its foot, its body being down in the car and the other mules were trampling upon it. These men procured a saw and hatchet and cut out the slat, which was of firm white oak, and let the mule's foot and leg down. One large black mule was standing on its flank. The place where the mule had kicked through was an opening three inches by five inches, where the outside slanting bars cross the slats. The car belonged to the Illinois Central Railroad Company, and was built as stock cars usually are. There was no hasp on the car door that could have caused the death of the mule, as contended by appellee. There was a clause in the contract of shipment that the company should not be held responsible for injuries to the mules if such injuries were caused by any act of the mules themselves. The car in which the mules were shipped was selected by appellee at Cairo, and was the same car in which the mules arrived at Vicksburg.

The testimony of plaintiff, in rebuttal of defendant's proof as to cause of death, consisted, in the opinion of some witnesses, that the injury might have been caused by the hasp of the car door, if there had been such hasp (but the testimony of defendant, which was all there was on this point, was that there was no such hasp on the car door), and the opinion of two other witnesses that the injury could not have been inflicted, as the witnesses of defendant said it was.

There was verdict and judgment for plaintiff, whereupon the defendant appealed to the Supreme Court.

APPEALED from Circuit Court, Warren county, RALPH NORTH, Judge.

Reversed and remanded, April 12, 1886.

*Attorneys for appellant, Nugent & McWillie.*

*Attorneys for appellee, Miller, Smith & Hirsh.*

Brief of Nugent & McWillie:

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

The railroad companies in this case were private carriers, and the special contract must determine the liabilities and rights of the parties. The identical agreement was construed and upheld by the court in Railroad Co. v. Henlein & Barr, 19 Am. Ry. Rep. 200 and in Penn. v. Rrailroad Co., 49 N. Y. 204, and Cragin v. Railroad Co., 51 N. Y. 61. In this case the burden of proof was upon the owner to prove negligence before he could impose a liability upon the carrier. Clark v. Railroad Co., 17 Am. Ry. Rep. 284. The statute as to evidence could not be invoked to aid the recovery. Now the mules were loaded at St. Louis and unloaded by the owner or shipper at Cairo, and placed by him in a stock car of the Illinois Central Railroad Company. From this car they were not removed until some hours after their arrival at Vicksburg, and then only in the effort to save the appellee from loss. The declaration alleges that the Illinois Central Railroad Company, in furtherance of the understanding, delivered the mules at Jackson to the appellant company, and thereupon it became the duty of the appellant to transport and deliver the mules to Vicksburg. The mules were not unloaded at Jackson and placed in one of appellant's cars, but, being in charge of the owner's agent, the car containing them was switched onto the track of appellant and attached to its train. It is clear, therefore, that the receipt of the mules by appellant under these circumstances imposed upon it the sole duty of carrying the car and its contents to Vicksburg. As it was tendered to them by the owner, so they received it, and they had the right to suppose and believe it to be a proper car. This is considered a sufficient answer to the suggestion that the car was defectively constructed, either as to the slats surrounding it, or the door fastening. If such defects existed the plaintiff below failed to show that the appellant company was aware of the fact. Ill. Cent. R. Co. v. Hall, 11 Am. Ry. Rep. 95; Squire and Others v. Railroad Co., 98 Mass. 244; 2 Rorer on Railroads, 1307.   \*   \*   \*

There could hardly be a doubt in the mind of any one as to the cause of the injury to the mule. There were three witnesses for the company, two of whom saw the mule in the car down and being trampled to death by the other mules. Bruner and Sanders, night watchmen at the company's yard in Vicksburg, at 2:30 o'clock

in the morning, on examination of the car, found that one mule had "kicked his hind foot through the slat work of the car about five feet from the bottom, and was hung up by his foot, its body being down in the car and the other mules were trampling it." These men got a saw and hatchet, and sawed out the slat, which was of firm white oak, and let the mule's foot and leg down. One large black mule was standing on its flank. The place where the mule had kicked through was an opening three inches by five inches, where the outside slanting bars cross the slats. The car belonged to the Illinois Central Railroad Company and was built as stock cars usually are. There was no hasp on the car door that could have injured the animal; the fastening was down at the bottom of the door. The mule was not hurt by any hasp or anything else about the car. The slats were made of good solid white oak, and the mules were all right when they came into the station at Vicksburg that night. These statements are made by two eye-witnesses of the transaction, and ought to have been credited.   *   *   *

But the case was wholly misconceived by the court. The carrier had conveyed the mules safely to Vicksburg and they were all right when they reached the company's yards. There was no fraud or gross negligence shown. The mules were in a car of the Illinois Central Railroad Company, properly constructed, and one, too, selected by the owner or shipper at Cairo. The yards were guarded by night watchmen, and every caution taken to guard against accidents. There can, I think, be no doubt as to the cause of the injury. The mules were crowded in the car and, doubtless, had become leg weary and restive when the car was stopped at Vicksburg. In this condition it is not unlikely that, for some cause or other, the injured mule kicked at the slats and got hung. Falling down, as he necessarily would, the other mules tramped upon him and injured him. It was against precisely this sort of injury that the contract provided, and the court should have charged the jury to find for the defendant below.

Brief for appellee not found in the record.

OPINION.—COOPER, C. J.:

The defendant has given a reasonable and, if true, a sufficient explanation of the cause of the injury to the mule of the appellee. It has assumed the burden devolved upon it by law, and shown

that the injury occurred by reason of the fault of the animal and not of the carrier, and having thus shown it to have arisen from a cause as which by its contract it was relieved from liability by the contract of shipment, without fault on its part, it made a *prima facie* case which entitled it to verdict until overthrown by other evidence. The whole testimony for the plaintiff in rebuttal of the defense thus established consists, in the opinion of some witnesses, that the injury might have been inflicted by the hasp of the car door if there had been such hasp (the testimony for the defendant, which was all there was on this subject, was that there was no such hasp on the door), and the opinion of two witnesses that the injury could not have been inflicted as the witnesses of the defendant say it was. In the latter opinion the witnesses for the plaintiff differ, one saying it might have been so inflicted, and the other that it might not.

The verdict is against the manifest preponderance of the testimony, and it is

*Reversed, and a new trial is awarded.*